2012 Ark. 335

**ARKANSAS HOTELS AND ENTERTAINMENT, INC., Petitioner**

v.

**Mark MARTIN, Arkansas Secretary of State, in his Official Capacity, Respondent**

v.

**Bill Walmsley, Darrell Meyer, and Bill McDowell, Individually and on Behalf of The Arkansas Racing Alliance, Intervenors/Respondents.**

No. 12–647.

Supreme Court of Arkansas.

Sept. 20, 2012.

John T. Harmon, for petitioner.

A.J. Kelly, Deputy Secretary of State, and Martha Adcock, Associate Counsel, for respondent.

Friday, Eldredge & Clark, LLP, Little Rock, by: Elizabeth Robben Murray and Robert S. Shafer, for intervenors/respondents.

KAREN R. BAKER, Justice.

Petitioner, Arkansas Hotels and Entertainment, Inc. ("AHE"), brings this original action seeking a writ of mandamus requiring the Secretary of State to accept its petitions for an initiated constitutional amendment to be placed on the November 6, 2012 ballot. Petitioner seeks a writ of mandamus against Respondent Mark Martin, in his official capacity as Arkansas's Secretary of State, requiring him to accept AHE's petition as timely filed containing, prima facie, the required number of signa-

tures for an initiated constitutional amendment, and further ordering the Secretary of State to permit AHE thirty days to cure any shortcomings in its petition. We deny AHE's petition for writ of mandamus.

## I. *Jurisdiction*

This court has original jurisdiction of this case pursuant to Arkansas Supreme Court Rule 6–5(a) and 1–2(a)(3)(2011). Rule 6–5(a) provides this court has original jurisdiction in "extraordinary actions required by law, such as suits attacking the validity of statewide petitions filed under Amendment 7 of the Arkansas Constitution."[1] Rule 1–2(a)(3) allows this court to exercise jurisdiction over this petition for writ of mandamus.

## *Facts*

AHE, a for profit corporation, filed its Articles of Incorporation with the Respondent, the Secretary of State, on January 12, 2009. AHE's President and sole shareholder, Michael Wasserman, resides in Texas. On February 10, 2010, AHE registered as a "Ballot Question Committee" with the Secretary of State. On July 6, 2012, AHE filed a petition under Amendment 7 seeking to place a proposed amendment to the Arkansas Constitution on the November 6, 2012 general-election ballot. The proposed amendment would allow AHE to operate seven casinos in the state. On July 11, 2012, the Secretary of State notified AHE that its petition failed to satisfy the Ark. Const. Art. 5, § 1 requirements. On July 18, 2012, AHE responded to the Secretary of State's finding and requested thirty days to correct or amend its petition based on Ark. Const. Art. 5, § 1 and *Dixon v. Hall,* 210 Ark. 891, 198 S.W.2d 1002 (1946). On July 20, 2012, the Secretary of State issued a formal Certification to AHE, stating that the petition submitted for a proposed constitutional amendment sponsored by AHE "failed to submit sufficient signatures from at least (15) separate counties and thus did not meet the requirements as established by Ark. Const. Art. 5 § 1 of the Arkansas Constitution in order to place a measure on the Arkansas General Election Ballot on November 6, 2012." In a letter dated July 20, 2012, the Secretary of State informed AHE that the petition did not meet "prima facie" signature requirements, the petition was a "complete failure," and no correction or amendment was permitted under *Dixon.* On August 3, 2012, AHE filed this petition seeking a writ of mandamus requiring the Secretary of State to accept the petitions as timely filed containing, prima facie, the required number of signatures for an initiated constitutional amendment, and further ordering the Secretary of State to permit AHE thirty days to cure any shortcomings in its petition. On August 13, 2012, the Secretary of State responded to the petition, and Intervenors, Arkansas Racing Alliance ("ARA"), filed a motion to intervene. On August 13, 2012, the Secretary of State also filed a Motion for Appointment of Special Master to resolve any outstanding issues of material fact. On August 14, 2012, this court granted ARA's Motion to Intervene and held in abeyance the Secretary of State's Motion for Appointment of Special Master.

## II. *Points on Appeal*

A. Whether AHE has Standing to Invoke this Court's Jurisdiction Pursuant to Rule 6–5(a) and Apply for a Writ of Mandamus.

Initially, we must determine if AHE has standing to invoke this court's jurisdiction.

---

1. Amendment 7 to the Constitution is codified in Article 5, § 1 of the Arkansas Constitution and is referred to as Amendment 7.

AHE asserts that this court has original jurisdiction pursuant to Rule 6–5 of the Rules of the Supreme Court and Const. art. 5, section 1 of the Arkansas Constitution. The Secretary of State responds that AHE lacks standing to bring this action because AHE is a for-profit corporation and not a registered voter, not the sponsor of the petition, and no legal voters were joined to invoke the court's jurisdiction. ARA agrees. AHE did not reply to the Secretary of State's or ARA's arguments that it lacks standing to bring this action.

The question of standing is a matter of law for this court to decide, and this court reviews questions of law de novo. *Farm Bureau v. Running M Farms, Inc.*, 366 Ark. 480, 237 S.W.3d 32 (2006).

Arkansas Supreme Court Rule 6–5 provides this court with original jurisdiction "in extraordinary actions as required by law, such as suits attacking the validity of statewide petitions filed under Amendment 7 of the Arkansas Constitution, or where the Supreme Court's contempt powers are at issue." Amendment 7 provides that "the people reserve to themselves the power to propose legislative measures, laws and amendments to the Constitution, and to enact or reject the same at the polls independent of the General Assembly ... **Initiative.** The first power reserved by the people is the initiative. Eight per cent of the legal voters may propose any law and ten per cent may propose a constitutional amendment by initiative petition." Ark. Const. art. 5, § 1, amended by amend. 7.

Arkansas Code Annotated sections 7–9–101 to –506 (Repl.2011) govern Initiatives, Referenda, and Constitutional Amendments and provide the procedures for initiative approval and placement on the ballot. The statutes define the parties and persons involved in ballot initiatives. First, Arkansas Code Annotated section 7–9–125(8) (Repl.2011) provides that a "sponsor" means a person or persons who arrange for the circulation of initiative, referendum, or constitutional amendment petitions or who file an initiative, referendum, or constitutional amendment with the Secretary of State or other authorized recipient of the petitions. Second, Ark.Code Annotated section 7–9–402(9)(A) defines a person as any individual, business, proprietorship, firm, partnership, joint venture, syndicate, business trust, labor organization, company, corporation, association, committee, or any other organization or group of persons acting in concert. Third, Arkansas Code Annotated section 7–9–402(2)(A) defines a Ballot Question Committee as any person, located within or outside Arkansas, that receives contributions for the purpose of expressly advocating the qualification, disqualification, passage, or defeat of any ballot question, or any person, other than a public servant, a governmental body expending public funds, or an individual, located within or outside Arkansas, that makes expenditures for the purpose of expressly advocating the qualification, disqualification, passage, or defeat of any ballot question. Finally, Arkansas Code Annotated section 7–9–111(d)(1) sets forth the procedures for the determination of the sufficiency of the petitions once the initiative is filed with the Secretary of State and provides that if the petition is found to be insufficient, the Secretary of State must notify the petition's "sponsor."

In *Committee to Establish Sherwood Fire Dep't v. Hillman*, 353 Ark. 501, 109 S.W.3d 641 (2003), we addressed the issue of standing to intervene in a ballot-title challenge. In *Hillman*, the Committee circulated a petition to place an ordinance on the ballot. The City Clerk, Virginia

Hillman, certified the petition to the county-election commission. Two voters, separate from the Committee, filed suit against Hillman in circuit court challenging the constitutionality of the ballot title. The Committee, acting as an unincorporated nonprofit organization, intervened in the action at the circuit court level. This court reversed because the Committee lacked standing to intervene because it was not joined by a local voter, and it did not purport to represent local voters. *Hillman,* 353 Ark. at 513, 109 S.W.3d at 647.

The Secretary of State and ARA both assert that AHE lacks standing to invoke this court's jurisdiction because AHE is not a legal voter and does not represent a legal voter, which they maintain *Hillman* requires to establish standing. We disagree. *Hillman* can be distinguished from this case on four grounds. First, AHE is not an unincorporated nonprofit committee of people. AHE is an incorporated sponsor with an identified purpose to place a ballot initiative regarding casino operations on the ballot. Second, AHE is not attempting to intervene in litigation involving the constitutionality of a ballot title. As a sponsor of a "failed" initiative, AHE is seeking a writ of mandamus in an attempt to cure its own initiative's deficiencies. Third, in *Hillman,* the Committee failed to present proof that the initiative was presented through a Ballot Question Committee. Here, AHE is a registered Ballot Question Committee, asking this court for a certification of its petition or time to correct. Fourth, in *Hillman,* the Committee did not have a connection to the voters, but, here AHE is a sponsor of a ballot initiative creating a nexus to the voters on whose behalf it presented the petition. Although AHE did not join a legal voter in this action, as a sponsor of the petition, AHE has a connection to thousands of voters as it represents their interests in filing its initiative.

Additionally, our conclusion that AHE has standing is not contradicted by the holding in *Committee for Utility Trimming, Inc. v. Hamilton,* 290 Ark. 283, 718 S.W.2d 933 (1986). In *Hamilton,* a Committee collected signatures to place a proposal on the general-election ballot. The county clerk rejected the petition due to signature deficiencies. The Committee filed a petition for review in circuit court. The circuit court dismissed the Committee's petition finding that the Committee had not been incorporated under the law, was not in existence, and could not initiate a lawsuit. We affirmed, explaining that "the simple fact is that the [Committee] elected to proceed as a corporation and failed to perform the most elementary act necessary to become a corporation—file its articles. . . . Since the corporation did not exist legally, it could not file a complaint in court under our law, and such a complaint was properly dismissed." *Hamilton,* 290 Ark. at 285, 718 S.W.2d at 934. In *Hamilton,* the unincorporated Committee could not initiate its lawsuit because it was not qualified to assert standing; but here, AHE is an incorporated sponsor.

The record demonstrates that AHE, as a corporate sponsor, has orchestrated the effort to place this initiative on the ballot for approximately two years. We hold, pursuant to the enabling legislation, sections 7–9–111, 7–9–125(8), 7–9–402(2)(A)(9) of the Arkansas Code, that AHE as sponsor has standing to invoke this court's jurisdiction.

B. Whether the Secretary of State Failed to Act in Conformity with Amendment 7 of Article 5, § 1 and Arkansas Code Annotated Section 7–9–111(d)

 The second issue before the court is whether the Secretary of State's office acted in conformity with Amendment 7 of

Article 5, § 1 and Arkansas Code Annotated section 7–9–111(d).[8] The parties disagree as to the correct interpretation of article 5, § 1 and section 7–9–111. AHE asserts that article 5, § 1 and section 7–9–111(d) require a petition for a constitutional amendment to be presented with either (1) the statewide-signature requirement or (2) the county-signature requirement for the petition to be facially valid. Once either of the signature requirements has been met, AHE asserts, the Secretary of State is required to provide thirty days for the sponsor to cure its petition's insufficiencies. The Secretary of State and ARA both maintain that Amendment 7 of Article 5, § 1 and Arkansas Code Annotated section 7–9–111(d) require that a petition for a constitutional amendment must contain, prima facie, both the overall statewide-signature requirement and the county signature requirement in order to qualify for the additional thirty days to remedy any deficiencies.

When interpreting statutes, our review is de novo, as it is for this court to decide what a constitutional and statutory provision mean. *Fitton v. Bank of Little Rock*, 2010 Ark. 280, 365 S.W.3d 888 (2010).

When interpreting a statute, "we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. We construe the statute so that no word is left void, superfluous, or insignificant, and we give meaning and effect to every word in the statute, if possible." *DaimlerChrysler Corp. v. Smelser*, 375 Ark. 216, 222, 289 S.W.3d 466, 472 (2008) (internal citations omitted). When interpreting the constitution, "our task is to read the laws as they are written, and interpret them in accordance with established principles of constitutional construction.... Language of a constitutional provision that is plain and unambiguous must be given its obvious and common meaning." *Smith v. Sidney Moncrief Pontiac, Buick, GMC Co.*, 353 Ark. 701, 720, 120 S.W.3d 525, 537 (2003) (internal citations omitted).

Amendment 7 provides that "the people reserve to themselves the power to propose legislative measures, laws and amendments to the Constitution, and to enact or reject the same at the polls independent of the General Assembly ... **Initiative.** The first power reserved by the people is the initiative. Eight per cent of the legal voters may propose any law and ten per cent may propose a constitutional amendment by initiative petition...." Ark. Const. art. 5, § 1. Amendment 7 further provides that, in addition to the statewide requirement, "it shall be necessary to file from at least fifteen of the counties of the State, petitions bearing the signature of not less than one-half of the designated percentage of the electors of such county." *Id.* In other words, for a petition to amend the constitution, the petition must bear signatures meeting the statewide requirement, ten percent, and the county requirement, five percent. *Id.* Once the petitions are submitted, section 7–9–111 of the Arkansas Code provides for the determination of the sufficiency of the petition and allows the sponsor thirty additional days to provide sufficiency of signatures.

In *Dixon v. Hall*, 210 Ark. 891, 198 S.W.2d 1002 (1946), the parties agreed that the sponsors's petition was short on the required number of signatures on the face of its petition. The sponsors asserted that, upon presenting its petition, even though its petition was deficient in signatures, Amendment 7 required the Secretary of State to provide the sponsors thirty days to gather additional signatures. In *Dixon*, this court rejected the argument that a petition did not have to meet the prima facie constitutional requirements to

qualify for the additional thirty days, explaining that "An elastic construction would be the result if we should say that the right to correct and amend means that proponents may file an obviously deficient petition—containing, for example, one name from each of 15 counties—and upon notification by the Secretary of State that 20,000 or more additional names were needed it would become mandatory that time be extended 30 days from the so-called 'dead line.'" *Id.* at 893, 198 S.W.2d. at 1003. This court went on to hold that "under any rational construction, it was intended that a petition be filed within the time fixed by Amendment No. 7. To be a petition, it must, prima facie, contain at the time of filing the required number of signatures. Correction and amendment go to form and error, rather than to complete failure." *Id.* Thus, *Dixon* makes clear that a petition must on its face contain, at the time of the filing, the required signatures. In interpreting Article 5, § 1 (Amendment 7) and Ark.Code Ann. § 7–9–111, we hold that, in order to qualify for additional time, the petition must first, on its face, contain a sufficient number of signatures pursuant to both the state-wide and fifteen-county requirement, before the thirty-day provision to correct deficiencies applies. *Id.*

Here, in order to trigger the additional thirty days to cure its petition, AHE was required to present a facially valid petition. Once the Secretary of State found that, on its face, AHE's petition was lacking the requisite number of county signatures, it deemed AHE's petition a "complete failure." Although the Secretary of State and ARA have presented evidence as to the number of signatures required and presented, besides AHE's arguments in its briefs to the court, AHE has failed to provide any documentation regarding the prima facie sufficiency of its petition. The Secretary of State requested a special master be appointed to determine the number of signatures required and submitted. However, we find such an appointment unnecessary because AHE has failed to provide the court with any evidence of the validity of its petition.[2]

Thus, we hold that AHE failed to submit a facially valid petition and did not qualify for the additional thirty days to cure deficiencies. We dismiss the Secretary of State's motion to appoint a special master as moot and deny AHE's petition for writ of mandamus.

HANNAH, C.J., and BROWN, J., concur.

JIM HANNAH, Chief Justice, concurring.

I concur in the conclusion that the petition for writ of mandamus must be denied. However, I disagree with the majority's analysis. This petition must be dismissed because Arkansas Hotels and Entertainment, Inc. (AHE) lacks standing. Amendment 7 reserves to "the people ... the power to propose legislative measures, laws and amendments to the Constitution." Ark. Const., art. 5, § 1. "[T]he people" is a reference to "the People of the State of Arkansas." *See* Ark. Const. pmbl. The subject initiative is proposed by the "Arkansas Hotels and Entertainment Ballot Committee," P.O. Box 997, Gainesville, Texas. The Ballot Question Committee Statement of Organization lists Michael Wasserman of the same address in Texas as the president and sole member of the Committee. While AHE is an Arkansas corporation, there is no evidence that

---

**2.** In requesting a writ of mandamus, AHE must show a clear and certain right to the relief requested. *Manila School Dist. No. 15 v. Wagner,* 357 Ark. 20, 159 S.W.3d 285 (2004).

there are any Arkansas directors or shareholders. Rather, the evidence we have is that Michael Wasserman, a Texas resident, is the sole director and shareholder of the corporation.

Therefore, the initiative is proposed by a resident of Texas. The creation and use of this Arkansas corporation to serve as the initiating person fails. While a corporation may be considered a person under the statutes, to even potentially satisfy the requirement of amendment 7 that a law be proposed by the people of Arkansas, it would have to include Arkansas residents as directors or shareholders. The use of an Arkansas corporation in this case was a ruse to permit a resident of Texas to propose the law; this is not permitted under amendment 7. Therefore, I conclude that AHE lacks standing to propose the law or petition this court and agree that the petition must be dismissed.

BROWN, J., joins.